# In re Anonymous No. 76 D.B. 87

Disciplinary Board Docket no. 76 D.B. 87.

*Hearing Committee,* October 10, 1988 — This case involves the allegations:

(a) That respondent who was retained by an insurance carrier to protect its subrogation interest in a third-party suit misrepresented himself to others when he identified himself as an attorney for the carrier; and

(b) That respondent requested an investigator, who did an investigation for the carrier whose interest respondent represented, not to cooperate with opposing counsel and avoid a subpoena if one ever issued.

Respondent contends he was retained by the carrier to protect its subrogation interest, and, that he did not suggest or agree to pay a witness to be unavailable or avoid a subpoena.

The issues are whether respondent can hold himself out as representing an insurance carrier when it retained him to represent its subrogation lien, and, whether the witness' testimony and the alleged suggestion to avoid a subpoena for payment is credible.

The hearing committee recommends that the petition for discipline be dismissed.

## STATEMENT OF CASE

On November 27, 1973, [A], an employee of [B], suffered a work-related injury while unloading a truck owned by [C]. [A] was awarded workers' compensation benefits for permanent total disability. The indemnity payments and medical expenses were paid by [D], the compensation carrier for [B].

[D] filed a petition to modify the [A] payments on the basis that he was only partially disabled. [D] retained [E] to conduct a surveillance on [A] and take films of his activities. The surveillance evidence was introduced by [D] at a workers' compensation hearing on the petition. In 1983, the referee entered an order finding [A] permanently partially disabled, based in part on the surveillance investigation. [A] was not represented by respondent in any of the workers' compensation proceedings. [D] has retained another counsel for those proceedings.

Respondent represented [A] in a third-party action against [C]. [D] retained respondent to protect its subrogation lien for the benefits paid. [C] was insured by [F] and represented by Messrs. [G] and [H].

The third-party case was scheduled for trial in March 1986. In February 1986, [G] contacted [E] to arrange a meeting for the testimony of the investigator and use of the surveillance file it did for [D] in 1981 for the workers' compensation hearing. The investigator was no longer employed by [E], however, [G] was told the file would be available, and the investigator would arrange a meeting with him. The meeting was scheduled for March 8, 1986. On March 4, 1986, in anticipation of the meeting with the investigator, [G] requested the file from [E]. He indicated that he had [D's] permission to do this. To verify this, [E] contacted [D]. [D] called respon-

dent's office and talked to an associate. Respondent's associate advised [D] that [G] represented the adverse party and its carrier; that permission should not be given to release the 1981 surveillance file; and that [E] should not cooperate with [G]. In turn, [E] notified the investigator that he was to cancel the meeting with [G] and call respondent. The investigator called respondent at which time the investigator states they discussed his avoidance of a subpoena and payment of compensation for doing so. This is denied by respondent. The investigator states respondent identified himself as "attorney for [D]."

The investigator did not appear at the meeting scheduled with [G] on Saturday, March 8, 1986. He did not notify [G] that he was not going to attend. On Monday, March 10, 1986, [G] called [E] on the investigator's failure to appear. He was apprised of [D's] instructions not to cooperate. [G] told [E] that respondent represented [A] and [D's] subrogation interest. On March 12, 1986, respondent called [E] and identified himself as [D'ls] attorney, and wanted to discuss the [D] surveillance file and acquire a copy. [E] advised that if he was [D's] attorney he should have a copy of the file.

The case scheduled for March 17, 1986 was continued. A motion was filed with the court by [G's] office to have respondent disqualified as counsel for [A] because disciplinary proceedings had been filed. This motion was denied by the [    ] County Court. Thereafter, a petition of interlocutory appeal was filed from the lower court decision. The Superior Court denied the petition.

It is alleged that the following disciplinary rules were violated:

(A) D.R. 1-102(A)(4), which forbids a lawyer to

engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(B) D.R. 1-102(A)(5), which forbids a lawyer to engage in conduct that is prejudicial to the administration of justice.

(C) D.R. 1-102(A)(6), which forbids a lawyer to engage in conduct that adversely reflects on his fitness to practice law.

(D) D.R. 1-102(A)(5), which forbids a lawyer to knowingly make a false statement of law or fact.

(E) D.R. 7-102(A)(8), which forbids a lawyer to knowingly engage in other illegal conduct or conduct contrary to a disciplinary rule.

(F) D.R. 7-109(B), which forbids a lawyer to advise or cause a person to secrete himself or to leave the jurisdiction of a tribunal for the purpose of making him unavailable as a witness therein.

## FINDINGS OF FACT

(1) Respondent, [ ], Esq., was admitted to practice law in the Commonwealth of Pennsylvania in 1952, and, maintains his principal office at [ ].

(2) On November 27, 1973, [A], an employee of [B], [ ], Pa. suffered a work-related injury while unloading a freight truck owned by [C] for which he was awarded workers' compensation benefits in 1974 for permanent total disability.

(3) [D] is the workers' compensation insurance carrier for [B], and it paid the medical expenses and other workers' compensation benefits to [A] from 1974 to the present date.

(4) [D] on behalf of [B] caused a petition for modification to be filed on August 10, 1981, requesting the disability payments to [A] be modified for reason of the fact that he could perform certain work.

(5) In preparation for a hearing on the petition, [D] retained [E], Private Investigators, [ ], Pa. to place [A] under surveillance because of a suspicion that he was working for or operating a catering business.

(6) The investigation was conducted by [I], an investigator for [E], who in the latter part of 1981, observed [A] for three days, took films of him and prepared a surveillance report.

(7) [A] was represented by an attorney other than respondent in the workers' compensation proceeding.

(8) [D] and the [B] were represented by [J], Esq.

(9) At the workers' compensation hearing held on March 19, 1982, [D] on behalf of the employer introduced into evidence the films and testimony of the investigator, [I].

(10) As a result of the medical testimony, and, part, the testimony of [I] as to his surveillance and films, the referee concluded that [A] was permanently partially disabled, and on August 24, 1983 ordered the [B] and its carrier [D] to pay compensation to [A] at the rate of $100 a week which was identical to the amount of weekly indemnity paid to [A] while he was on total disability.

(11) [A] retained respondent to represent him in a third-party action against [C].

(12) On November 6, 1975, respondent caused a writ of summons to be issued on behalf of [A] and his wife against [C].

(13) [D] had retained respondent to protect its workers' compensation subrogation lien for benefits paid to or on behalf of [A] in the event there was a recovery in the case of *[A] v. [C]*.

(14) Respondent's arrangement with [A] and [D] was on a contingency basis being a percentage of the total recovery, if any.

(15) [A] was a Peruvian, and had difficulty in communicating, as a result of which respondent was unaware of the proceedings in the workers' compensation matter on the petition to modify until the early part of 1986 when respondent began preparing for trial on the third-party claims.

(16) The case of *[A] v. [C]* was listed for trial to commence the week of March 17, 1986.

(17) On February 21, 1986, in preparation for the trial of *[A] v. [C]*, attorney [G], whose firm had been designated by [F] Insurance Co. to defend the client, [C], contacted [D], president of [E], about the testimony of [I] and use of the reports and surveillance films made in the latter part of 1981 and which were introduced at the workers' compensation hearing of March 19, 1982.

(18) [K] advised attorney [G] that [I] was no longer employed by [E]; that he would contact [I]; that he would make the file available to [I]; that he did not have possession of the films because they were retained as evidence; that he would make available any materials needed for the testimony; that [G] would have to compensate [I], and, that [G] would have to provide [E] with a subpoena for the file.

(19) [K] contacted [I] and told him of his conversation with [G]; that the records were being subpoenaed; that the reports were being copied and would be available for [I's] review, and, that [I] should contact [G] to make arrangements for a meeting and testimony.

(20) On February 24, 1986, [I] called [G] and scheduled a meeting for March 8, 1986 for the purpose of reviewing his testimony.

(21) On March 4, 1986, [G] contacted [L] of [E] requesting that she have the file available for [I] to

review and to familiarize himself in preparation for the meeting of March 8, 1986.

(23) [L] contacted [M] of [D] as to whether it had given permission to release its file.

(24) [M] contacted [N], an associate of respondent, to determine whether [G] was associated with the respondent's firm, and, whether the information on [D's] file and investigation should be provided to him.

(25) [N] of the respondent's office advised [M] of [D] that [G] was retained by [F] to defend the case on behalf of [C], and, under these circumstances, [E] should refrain from cooperating or providing the file on the 1981 surveillance.

(26) On March 7, 1986, [D] through [M], notified [L] that [D's] file on [A's] surveillance should not be provided to [G], nor should they cooperate with [G].

(27) After being instructed by [D] not to provide the file or to cooperate with [G], [L] called [I] and advised him not to cooperate and to cancel his meeting with [G] scheduled for March 8, 1986.

(28) At no time on March 7, 1986, did respondent have contact with anyone from [E].

(29) On March 7, 1986, at or about 5:00 p.m., respondent received a telephone call from [I] who suggested to respondent that he could avoid a subpoena and be unavailable for $175 to $200. The telephone contact was made by [I] after he received the call from [L] not to cooperate with [G] and to call respondent.

(30) Respondent did not suggest or agree with [I's] proposal that he avoid a subpoena or be paid compensation for remaining unavailable.

(31) At the time of the telephone conversation with respondent on March 7, 1986, [I] knew that respondent was [D's] attorney to protect the workers' compensation subrogation lien.

(32) At no time did respondent misidentify himself to [I] as to his representation.

(33) At no time did respondent initiate a call to [I] concerning the [D] surveillance file.

(34) [I], in accordance with [L's] instructions, did not attend the scheduled meeting on March 8, 1986, with [G].

(35) [I] did not notify [G] that he was not going to meet as scheduled.

(36) On March 10, 1986, while inquiring as to [I's] failure to meet on March 8, 1986, [G] told [K] of [E] that respondent represented [A] and the subrogation lien of [D].

(37) On March 12, 1986, respondent contacted [E] for the first time and spoke to [K].

(38) On March 12, 1986, although [K] was aware of respondent's representation of [D's] subrogation interest as well as [A's] claim, he refused to provide [D's] file to respondent.

(39) Respondent did not misidentify or otherwise mislead [K] as to his representation.

## DISCUSSION

The committee, after receiving the evidence, and observing the candor, demeanor and character of respondent, determines his testimony to be acceptable and credible in making the findings. The testimony of [I] is not acceptable as being credible.

The committee feels respondent did not misrepresent his representation, nor did he propose that the investigator make himself unavailable or avoid a subpoena for a payment of compensation.

## CONCLUSIONS OF LAW

Respondent did not violate any of the disciplinary rules of the Code of Professional Responsibility.

## RECOMMENDATION OF CASE

The committee recommends that the petition for discipline be dismissed.

## ORDER

And now, December 9, 1988, upon consideration of the report and recommendation of Hearing Committee [    ] dated October 11, 1988, finding that no violation had been established and that the petition for discipline be dismissed; it is hereby ordered and decreed, that the charges against [respondent] be dismissed.